TAX COURT OF NEW JERSEY



Joshua D. Novin
Judge

Washington & Court Streets, 1st Floor
P.O. Box 910
Morristown, New Jersey 07963
Tel: (609) 815-2922, Ext. 54680
Fax: (973) 656-4305

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS

July 28, 2017

Douglas M. Standriff, Esq.
60 West Ridgewood Avenue
Ridgewood, New Jersey 07450

Adam J. Colicchio, Esq.
Palumbo, Renaud & DeAppolonio, LLC
190 North Avenue East, Suite 1
Cranford, New Jersey 07016

> Re: Sizes & Shapes, Inc. v. Roselle Borough
> Docket Nos. 006648-2013

Dear Mr. Standriff and Mr. Colicchio:

This letter constitutes the court's opinion following trial of the local property tax appeal in the above-referenced matter. Sizes & Shapes, Inc. ("plaintiff") challenges the 2013 local property tax assessment on its two-family dwelling located in the Borough of Roselle, County of Union and State of New Jersey.

For the reasons stated more fully below, the court affirms the 2013 tax year assessment and dismisses plaintiff's Complaint.

## I. Procedural History and Findings of Fact

Pursuant to R. 1:7-4, the court makes the following findings of fact and conclusions of law based on the evidence and testimony offered at trial.

Plaintiff is the owner of the two-family dwelling located at 245 East 9th Avenue, Roselle, New Jersey. The property is identified on Roselle Borough's municipal tax map as Block 2701,

Lot 24 (the "subject property"). For the 2013 tax year, the subject property was assessed as follows:

Land:        $ 53,600
Improvement: $ 57,500
Total:        $111,100

The average ratio of assessed to true value, commonly referred to as the Chapter 123 ratio, for Roselle Borough ("defendant") for the 2013 tax year was 57.61%. See N.J.S.A. 54:1-35a(a). When the average ratio is applied to the local property tax assessment, the implied equalized value of the subject property is $192,848.46 for the 2013 tax year.

The subject property was acquired by plaintiff on February 28, 2013 from Bank of America, N.A. under Quitclaim Deed dated February 15, 2013, for reported consideration of $60,375. Testimony offered during trial from plaintiff's principal disclosed that the Quitclaim Deed was recorded in the Union County Register's Office on May 31, 2013.[1] Bank of America, N.A. acquired title to the subject property by foreclosure deed dated June 15, 2010 from the Union County Sheriff.

At the time plaintiff acquired title to the subject property, a tenant occupied the first floor unit and the second floor unit was vacant. Following plaintiff's purchase of the subject property, on March 15, 2013, plaintiff entered into a written lease agreement with the first floor unit tenant, at a monthly rental rate of $900. Several months thereafter, on July 15, 2013, plaintiff entered into a written lease agreement with a tenant for the second floor unit, at a monthly rental rate of $1,100. Plaintiff admittedly performed minimal repairs and improvements to the subject property following its purchase.

On April 1, 2013, plaintiff filed a Petition of Appeal ("Petition of Appeal") with the Union County Board of Taxation (the "Board") challenging the subject property's 2013 local

---

[1] During trial, plaintiff produced only a copy of the unrecorded Quitclaim Deed.

property tax assessment. The Petition of Appeal was complete and identified: (i) plaintiff's name and address; (ii) the subject property's street address; (iii) the block and lot; (iii) the current assessment; (iv) the requested assessment; and (v) the name and address of plaintiff's counsel. The Petition of Appeal and accompanying Certification of Service were duly executed by plaintiff's counsel. Moreover, the Petition of Appeal bore the following stamp:

RECEIVED
APR 01 2013
UNION COUNTY TAX BOARD

By letter dated April 24, 2013, the Tax Administrator of the Union County Board of Taxation notified plaintiff that:

> [it] did not receive the appropriate proofs requested by the deadline indicated in the 'Notice of Incomplete Petition of Appeal' mailed to the address provided on the petition of tax appeal for 2013. . .
>
> Failure to comply on a timely basis has resulted in the dismissal of your appeal. Enclosed within is your original petition with the filing fee submitted.

Plaintiff's counsel submitted a copy of the executed and unrecorded Quitclaim Deed, dated February 15, 2013, to the Board with the Petition of Appeal. Apparently, however the Notice of Incomplete Petition of Appeal required plaintiff submit a copy of the recorded Quitclaim Deed in order to process the Petition of Appeal.

On May 3, 2013, plaintiff's counsel filed a Complaint with the Tax Court contesting the Board's April 24, 2013 letter and action dismissing the Petition of Appeal.[2]

During trial, plaintiff offered testimony from plaintiff's principal, and testimony from a State of New Jersey licensed residential real estate appraiser, who was accepted by the court as

---

[2] During trial, neither party raised the issue of the court's subject matter jurisdiction in this action. However, following trial, the court invited both plaintiff and defendant to submit briefs, certifications and exhibits addressing the court's subject matter jurisdiction. Plaintiff submitted a supplemental certification from its principal, along with a copy of the partially executed HUD-1 Settlement Statement from the closing. Defendant made no submission.

an expert in the field of residential property valuation, without objection (the "expert"). The expert prepared an appraisal report for the subject property dated October 21, 2014, that was admitted into evidence without objection.

The subject property is a two-story, two-family dwelling, constructed in approximately 1910, in average condition, and is situated on a .10-acre lot. The dwelling consists of a total of ten rooms, four bedrooms, and two full bathrooms. The dwelling has a gross living area of approximately 1,922 square feet. The dwelling contains an unfinished basement, unfinished attic, a one-car driveway, and no garage. The dwelling is located in an established residential community, in close proximity to the "center of town," which provides convenient access to major highways. The subject property is located in Roselle Borough's South Central Neighborhood Revitalization Plan district. The subject property's neighborhood is experiencing a gentrification, with a number of residential dwellings having been renovated and resold; however, several other neighborhood dwellings remain unoccupied.

The expert relied principally on the comparable sales approach to reach his concluded opinion of value for the subject property. However, as discussed herein infra, the expert also expressed opinions of value for the subject property relying on the cost and income capitalization approaches to value. In the expert's opinion, the true market value of the subject property was $100,000, as of the October 1, 2012 valuation date.

**II.    Conclusions of Law**

a.  Subject Matter Jurisdiction

The Tax Court is a "court of limited jurisdiction." McMahon v. City of Newark, 195 N.J. 526, 542-543 (2008). The court's "jurisdiction is constrained by the language of its enabling statutes." Prime Accounting Dept. v. Township of Carney's Point, 212 N.J. 493, 505 (2013); see also Macleod v. City of Hoboken, 330 N.J. Super. 502, 505-06 (App. Div. 2000). The statutory

jurisdiction conferred on the court is expressed, in part, as the authority "to review actions or regulations with respect to a tax matter of. . . (2) [a] county board of taxation; (3) [a] county or municipal official. N.J.S.A. 2B:13-2. An inuring compliance with filing requirements and statutory deadlines is a condition precedent to conferring jurisdiction on the court to review the actions of a county board of taxation or county official. In sum, "'[t]he right to appeal a real property assessment is statutory, and the appellant is required to comply with all applicable statutory requirements.'" Macleod, supra, 330 N.J. Super. at 505 (quoting F.M.C. Stores Co. v. Borough of Morris Plains, 195 N.J. Super. 373, 381 (App. Div. 1984), aff'd, 100 N.J. 418 (1985)).

N.J.S.A. 54:3-21 prescribes the procedure for a "taxpayer" or a "taxing district" to institute a challenge to the local property tax assessment. N.J.S.A. 54:3-21, provides, in relevant part, that:

> [a] taxpayer feeling aggrieved by the assessed valuation of the taxpayer's property, or feeling discriminated against by the assessed valuation of other property in the county…may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal; provided however, that any such taxpayer or taxing district may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.

> [N.J.S.A. 54:3-21.]

However, it is well settled that an aggrieved taxpayer need not be the legal owner of the property to levy a challenge to the local property tax assessment. Over the years, our courts have expanded the definition of an aggrieved taxpayer to include tenants, mortgage holders, tax-sale certificate holders, spouses holding marital rights of possession, and court-appointed rent receivers. See, e.g. Prime Accounting Dept., supra, 212 N.J. at 507; Village Supermarkets, Inc.

v. West Orange Twp., 106 N.J. 628, 635 (1987); NNN Lake Ctr., LLC v. Twp. of Evesham, 28 N.J. Tax 82, 91 (Tax 2014); Aperion Enterprises, Inc. v. Borough of Fair Lawn, 25 N.J. Tax 70, 79 (Tax 2009); Slater v. Holmdel Twp., 20 N.J. Tax 8, 12 (Tax 2002); Lato v. Rockaway Twp., 16 N.J. Tax 355, 359-60 (Tax 1997); Rainhold Holding Co. v. Freehold Twp., 14 N.J. Tax 266, 270-71 (Tax 1994); Chemical Bank N.J., N.A. v. City of Absecon, 13 N.J. Tax 1 (Tax 1992); Ewing Twp. v. Mercer Paper Tube Corp., 8 N.J. Tax 84, 88 (Tax 1985).

In weighing whether a party was an aggrieved taxpayer, the focus of the court's inquiry has been whether the petitioner, at the time of institution of the action, was the taxpayer or possessed a "sufficient financial interest" in the property, which interest is or will be affected by the challenged assessment. NNN Lake Ctr., LLC, supra, 28 N.J. Tax at 89. See also Mobil Admin. Serv Co. v. Township of Mansfield, 15 N.J. Tax 583 (Tax 1996), aff'd, 17 N.J. Tax 509 (App. Div. 1997) (concluding that a subsequent purchaser of property was not an aggrieved taxpayer as of the April 1st deadline for filing a tax appeal "within the meaning of N.J.S.A. 54:3-21 because, as of such date, it had no interest in the subject property and no obligation to pay property taxes assessed to the property.")

Here, the Board apparently requested plaintiff submit a copy of the recorded Quitclaim Deed evidencing plaintiff's legal ownership of the subject property and standing, as an aggrieved taxpayer, to challenge the 2013 tax year local property tax assessment. In response, plaintiff's counsel submitted a copy of the executed and unrecorded Quitclaim Deed dated February 15, 2013. Plaintiff's counsel maintains that he was unable to present the Board with the recorded Quitclaim Deed on April 1, 2013, as same had been forwarded by plaintiff's settlement agent to the Union County Register's Office for recording following the February 28, 2013 title closing. The original Quitclaim Deed was not recorded in the Union County Register's Office until May 31, 2013.

In sum, plaintiff argues that it was the legal owner of the subject property and an aggrieved taxpayer, following the February 28, 2013 title closing. Therefore, plaintiff asserts that it had standing before the Board to challenge the subject property's 2013 local property tax assessment. Moreover, plaintiff maintains that it has standing to challenge the Board's April 24, 2013 action dismissing the Petition of Appeal, and that this court enjoys subject matter jurisdiction over this matter.

In New Jersey, the transfer of an ownership interest in real property is accomplished by deed. N.J.S.A. 46:3-13. N.J.S.A. 46:3-13 provides, in part, that:

> Every deed conveying lands shall, unless an exception be made therein, be construed to include all the estate, right, title, interest, use, possession, property, claim and demand whatsoever, both in law and equity, of the grantor, including the fee simple if he had such an estate, of, in and to the premises conveyed. . .
>
> [N.J.S.A. 46:3-13.]

The transfer or conveyance of an interest in real property is "complete upon execution and delivery of the deed by the grantor, and acceptance of the deed by the grantee." H.K. v. State, 184 N.J. 367, 382 (2005) (citing In re Lillis' Estate, 123 N.J. Super. 280, 285 (App. Div. 1973)). Stated differently, a legal ownership interest in real property is conveyed "upon delivery" and acceptance of a duly executed deed. Tobar Constr. Co. v. R.C.P. Assocs., 293 N.J. Super. 409, 413 (App. Div. 1996). However, the "deed does not need to be recorded. . . in order to pass title." H.K., supra, 184 N.J. at 382 (citing Tobar Constr. Co., supra, 293 N.J. Super. at 413). Thus, an unrecorded deed "is perfectly efficacious in passing title from grantor to grantee. . ." Siligato v. State, 268 N.J. Super. 21, 28 (App. Div. 1993). The process of recording a deed is a mechanism serving to protect the owner against "subsequent judgment creditors, purchasers and mortgagees." N.J.S.A. 46:22-1.

7

Nonetheless, as Judge Crabtree observed, "[w]hether delivery and acceptance [of a deed] have taken place. . . is a matter of intention." Dautel Builders v. Borough of Franklin, 11 N.J. Tax 353, 357 (1990) (citing 4 Tiffany, Real Property (3 ed. Callaghan 1975), § 1034 at 361); see also Campbell v. Heller, 36 N.J. Super. 361 (Ch. Div. 1955). If physical delivery of the deed is completed "without the requisite intent that the deed be presently effective as a conveyance of the grantor's title, there is, in legal contemplation, no delivery." Dautel Builders, supra, 11 N.J. Tax at 357. Evidence establishing that the grantor intended the deed and conveyance of real property to become immediately effective is sufficient to show delivery. Ibid. (citation omitted). Such intent "may be established by extrinsic and circumstantial evidence." Ibid. (citation omitted).

Application of the above principles to the evidence presented in this matter, leads the court to conclude that title to, and legal ownership in, the subject property was conveyed by Bank of America, N.A. to plaintiff on the February 28, 2013 closing date. Plaintiff produced credible evidence including, a partially executed HUD-1 Settlement Statement and a certification from plaintiff's principal reflecting that the title closing was consummated on February 28, 2013. Accordingly, on February 28, 2013, Bank of America, N.A. intended to convey and plaintiff accepted, title to the subject property, thereby becoming its legal owner. Thus, as of February 28, 2013, plaintiff was an aggrieved taxpayer, as such term is construed, under N.J.S.A. 54:3-21.

Pursuant to N.J.S.A. 2B:13-2, this court is vested with jurisdiction "to review actions. . . with respect to a tax matter of. . . (2) [a] county board of taxation." N.J.S.A. 2B:13-2 (emphasis added). Here, the Board's actions included the refusal to process, and the subsequent dismissal of plaintiff's timely filed Petition of Appeal. The Board actions gave rise to plaintiff's timely filed application to this court for relief. Accordingly, the court concludes that it enjoys subject

8

matter jurisdiction, under N.J.S.A. 54:3-21, to entertain plaintiff's challenge to the Board's dismissal of plaintiff's Petition of Appeal.

   b.   Presumption of Validity

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985) (citing Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 174 (1952)). "The presumption of correctness. . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Township v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value; that is, evidence "definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105 (1952). Thus, at the close of plaintiff's proofs, the court must be presented with evidence which raises a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 376.

In evaluating whether the evidence presented meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." Id. at 376 (citing Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520 (1995)). The evidence presented, when viewed under the Brill standard "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Properties, Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000), certif. denied, 165 N.J. 488 (2000)). "Only after the presumption is overcome with sufficient

9

evidence. . . must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" Greenblatt v. Englewood City, 26 N.J. Tax 41, 52 (Tax 2011) (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

At the close of plaintiff's proofs, defendant moved to dismiss this matter under R. 4:37-2(b), arguing that plaintiff failed to overcome the presumption of validity. The court denied defendant's motion and placed a statement of reasons on the record.

However, concluding that the presumption of validity has been overcome does not equate to a finding by the court that a local property tax assessment is erroneous. Once the presumption has been overcome, "the court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co. v. Edison Township, 127 N.J. 290, 312 (1992). Although the proofs, when measured against the liberal standards employed in evaluating a motion under R. 4:37-2(b), may be sufficient to overcome the presumption of validity at the close of plaintiff's case-in-chief, "the burden of proof remain[s] on the taxpayer. . . to demonstrate that the judgment under review was incorrect." Id. at 314-15 (citing Pantasote Co., supra, 100 N.J. at 413).

c. Methodology

"There is no single determinative approach to the valuation of real property." 125 Monitor Street LLC v. City of Jersey City, 21 N.J. Tax 232, 237-238 (Tax 2004) (citing Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 72 (App. Div. 1965)); ITT Continental Baking Co. v. East Brunswick Township, 1 N.J. Tax 244, 251 (Tax 1980). "There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001), certif. denied, 168 N.J. 291 (2001) (internal citation omitted)). The "decision as to which valuation

10

approach should predominate depends upon the facts of the particular case and the reaction to these facts by the experts." Coca-Cola Bottling Co. of New York v. Neptune Township, 8 N.J. Tax 169, 176 (Tax 1986) (citing New Brunswick v. Tax Appeals Div., 39 N.J. 537 (1963)). See also WCI-Westinghouse, Inc. v. Edison Township, 7 N.J. Tax, 610, 619 (Tax 1985), aff'd, 9 N.J. Tax 86 (App. Div. 1986). However, when the proofs submitted in support of one approach overshadow those submitted in support of any other approach, the court may conclude which approach should prevail. ITT Continental Baking Co., supra, 1 N.J. Tax 244; Pennwalt Corp. v. Holmdel Township, 4 N.J. Tax 51 (Tax 1982).

For the reasons that follow, the court concludes that the sales comparison approach is the most appropriate method to determine the true market value of the subject property.

During direct examination, the expert offered testimony in support of only the sales comparison method of valuation. Additionally, cross-examination did not produce any testimony from the expert with respect to any other methods employed to value the subject property. However, in response to the court's inquiry regarding the value conclusions contained on page 3 of his appraisal report, under the heading "cost approach to value" and "income approach to value," the expert explained that, "I factored in the cost approach, I didn't use it as my primary weight." The expert continued, "as far as the income approach is concerned, I did, in my notes factor [it] in, I did look at three rental properties that were located close to the subject property."

However, absent from the expert's report and testimony was any survey, data, support, or market information for the expert's income approach, including any identification of the comparable rentals, vacancy and collection loss rates utilized, calculation of stabilized expenses, the capitalization rate applied, or how an overall capitalization rate was derived. The only information contained in the expert's report in support of his income approach to value is a single line, which states: "Estimated Monthly Market Rent $2,400 x Gross Rent Multiplier 50 =

11

$120,000." The expert offered no explanation in either his appraisal report or testimony to support his use or calculation of a gross rent multiplier of 50. Moreover, the expert testified that his "notes" contained information on three rental properties identified as comparable, including an "operating income statement" however, none of that information was included in or annexed to his appraisal report. More importantly, in response to the court's questioning, plaintiff's expert admitted that he prepared the operating income statement "subsequent" to preparation of his appraisal report, thus it was an afterthought to his opinion of value for the subject property.

Similarly, absent from the expert's cost approach to value was any survey, commercially reliable report, or precise description of the data and information that he relied upon. The expert testified that in order to determine his land value, he identified one land sale, which sold approximately ten months after the October 1, 2012 valuation date, as well as listings of vacant land being offered for sale. However, the expert's appraisal report did not identify the location of the vacant land sale, the date of the land sale, nor did it identify the vacant land purportedly being marketed for sale. Although the expert testified that he examined Marshall & Swift cost tables to discern an estimated replacement cost for the dwelling, neither his appraisal report, nor his testimony offered any evidence of the table year he consulted, the classification he assigned to the subject property, the property type, the quality of construction, the cost factors, etc. Moreover, the expert provided no evidence or support for the $77,837 depreciation factor he applied to his estimated cost-new for the dwelling.

An expert must "give the why and wherefore" of his or her opinion, rather than a mere conclusion." Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002) (quoting Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div.), certif. denied 145 N.J. 374 (1996)). The bare conclusions of an expert, unsupported by factual evidence and data will not withstand judicial scrutiny and is an inadmissible "net opinion." State v. Townsend, 186 N.J.

473, 494-495 (2006). "As construed by applicable case law, N.J.R.E. 703 requires that an expert's opinion be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial." Rosenberg, supra, 352 N.J. Super. at 401 (citing Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)).

Here, the court concludes that the expert's cost and income approaches to value were unsupported by any credible evidence, information, or data. In his cost and income approaches to value, the expert offered unsubstantiated opinions without providing the necessary facts, rationale, reasons, surveys, and data supporting such conclusions. Accordingly, the court finds that the expert's conclusions under the cost and income approaches to value are inadmissible net opinions.

d. Valuation

Plaintiff's appraiser was accepted by the court as an expert in residential real property valuation, thereby permitting him to express opinion testimony. N.J.R.E. 702. In performing his sales comparison approach, the expert testified that between October 2011 and October 2012, eleven two-family dwellings were sold in Roselle Borough. According to the expert, nine of those transactions were designated "not usable" and two transactions were "marked usable." Although the expert did not elaborate on this point, the court interprets his reference to "not usable" and "usable" sales to denote the designation contained on form SR1-A, for the exclusion of sales transactions from the Director of the New Jersey Division of Taxation's annual assessment-sales ratio study. See N.J.A.C. 18:12-1.1(a).

Ultimately, the expert relied on the sale of three two-family dwellings in Roselle Borough that sold between August 2011 and August 2012. The unadjusted sale prices of the comparable sales ranged from $65,000 to $183,000. After adjustments, the adjusted sale prices ranged from $79,000 to $145,000.

Comparable sale one sold on May 14, 2012, for reported consideration of $80,000. This comparable is a two-family dwelling, located approximately .04 miles from the subject property. According to the expert, this comparable had a gross living area of 2,218 square feet, making it approximately 15% larger than the subject property. The expert made the following adjustments to the sale price of comparable sale one: (i) a positive adjustment of $20,000 for condition; (ii) a negative adjustment of $9,000, to account for differences in gross living area; and (iii) a negative adjustment of $3,000, to account for the presence of a one-car garage.

Comparable sale two sold on August 31, 2011, for reported consideration of $65,000. This comparable is a two-family dwelling, located approximately .13 miles from the subject property. According to the expert, this comparable had a gross living area of 1,838 square feet, making it approximately 5% smaller than the subject property. The expert made the following adjustments to the sale price of comparable sale two: (i) a positive adjustment of $20,000 for condition; (ii) a positive adjustment of $3,000, to account for differences in gross living area; (iii) a negative adjustment of $3,000, to account for the presence of a one-car garage; and (iv) a negative adjustment of $6,000, to account for the presence of two porches.

Comparable sale three sold on August 1, 2012, for reported consideration of $183,000. This comparable is a two-family dwelling, located approximately 1.39 miles from the subject property. This comparable was the only sale designated as "usable." See N.J.A.C. 18:12-1.1(a). According to the expert, this comparable sale had a gross living area of 2,090 square feet, making it approximately 9% larger than the subject property. Based on his review of the Garden State Multiple Listing Service listing, the expert opined that this comparable was superior to the subject property. The expert made the following adjustments to the sale price of comparable sale three: (i) a negative adjustment of $20,000, to account for what the expert deemed a superior location; (ii) a negative adjustment of $10,000 for property age; (iii) a negative adjustment of

14

$5,000, to account for differences in gross living area; and (iv) a negative adjustment of $3,000, to account for the presence of a one-car garage.

### 1. Research and data verification

When employing the sales comparison approach appraisers must adhere to "systematic procedure[s]." The Appraisal of Real Estate, supra, at 381. Appraisers must conduct research of the competitive marketplace for "information on properties that are similar to the subject property" and that have recently sold. Ibid. A crucial element of this investigation and research involves the data verification process. An appraiser must verify the integrity of the information by "confirming that the data obtained is factually accurate and that the transactions reflect arm's-length market considerations." Ibid. During the data verification process an appraiser must "elicit additional information about the property such as buyer motivation, economic characteristics, [and] value component allocations. . . to ensure that comparisons are credible." Ibid. The process demands an appraiser "verify information with a party to the transaction to ensure its accuracy and gain insight into the motivation behind each transaction." Id. at 385. An appraiser must endeavor to confirm "statements of fact with the principals to the transaction. . . or with brokers, closing agents, or lenders involved." Ibid.

Appraisers are similarly bound to ensure that their appraisal reports "conform to the Uniform Standards of Professional Appraisal Practice (USPAP) in effect on the date which the appraisal was prepared. . ." N.J.A.C. 13:40A-6.1. These standards require appraisers to "correctly complete research and analysis necessary to produce a credible result." The Appraisal Foundation, Uniform Standards of Professional Appraisal Practice, Standards Rule 1 (2012-2013 ed.). In developing a real property appraisal, appraisers "must. . . reconcile the quality and quantity of data available and analyzed" with the approach to value being utilized. Ibid.

Moreover, our Legislature has mandated that, in Tax Court proceedings, any person being offered as a witness with respect to the review of a local property tax assessment shall possess information or knowledge regarding comparable properties acquired from owners, sellers, purchasers, lessees, brokers or attorneys who were a party to, or participated in, the transaction. N.J.S.A. 2A:83-1. Specifically, N.J.S.A. 2A:83-1 requires that:

> in any action or proceeding in the Tax Court, any person offered as a witness in any such action or proceeding shall be competent to testify as to sales of comparable land, including any improvements thereon. . . from information or knowledge of such sales, obtained from the owner, seller, purchaser, lessee or occupant of such comparable land, or from information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales, which testimony when so offered, shall be competent and admissible evidence in any such action or proceeding.
>
> [N.J.S.A. 2A:83-1 (emphasis added).]

Here, the expert's conclusions and opinions suffer from flaws that are fatal to their credibility and reliability. The facts and data about the comparable sale transactions, upon which the expert's opinions of value were premised, were not verified, confirmed, or corroborated with any individuals possessing firsthand knowledge of, or a familiarity with those sale transactions. In conducting his comparable sales approach, the expert relied exclusively on information he gathered from the Garden State Multiple Listing Service ("GSMLS") website and New Jersey Association of County Tax Boards ("NJACTB") website.

Effective cross-examination disclosed that the expert did not contact or consult with, or attempt to contact or consult with the seller, purchaser, attorneys for the seller or purchaser, or the listing or purchasing real estate brokers who negotiated and possessed first-hand knowledge of such sale transactions.

Whether a sales transaction can be considered a reliable indicator of fair market value depends on an appraiser's analysis of the following criteria: (i) whether the buyer or the seller were

16

unusually motivated, (ii) whether the buyer and seller were well-advised and acting prudently, (iii) the length of time that the property was exposed to an open and competitive marketplace, (iv) whether the purchase price was paid in cash, and (v) whether the purchase price was affected by special or creative financing. Venture 17, LLC v. Borough of Hasbrouck Heights, 27 N.J. Tax 108, 126 (Tax 2013) (citing Hull Junction Holding Corp. v. Borough of Princeton, 16 N.J. Tax 68, 94 (Tax 1996)).  Here, the expert possessed no first-hand information satisfying these fundamental criteria on which to base his analysis and opinion of value.

In fact, the expert acknowledged that the GSMLS listing for comparable sale one stated that the purchase "price and commissions are subject to lender approval."  The expert recognized that this disclosure revealed the sale was a "short sale," or a transaction under which the purchase price may not satisfy the outstanding debt secured against the property, and for which lender approval was required.  However, the expert undertook no action to confer with any transaction participants regarding the condition of the property, the driving motivations of the seller or buyer, or whether the property's purchase price was effected by any special or creative financing.  The expert simply opined that he "felt that it [comparable sale one] was a good comparable, even though it was marked not usable."

In addition, the expert observed that the GSMLS listing for comparable sale two apparently disclosed that the property was being "sold under duress."  In fact, the expert's appraiser report recognized that "Comparable 2 was sold NU 13, Bankruptcy Sale, Sold in 'As Is' condition."  However, the expert undertook no action to ascertain what impact, if any, the seller's duress and seeming bankruptcy played in fixing the listing price and sale price of the property.  The court further observes from its independent review of the property listing offered into evidence that it states that lender approval of the sale is required.

In recognizing the pitfalls which exist with information reported on public websites and real estate multiple listing service websites, the Appraisal Institute cautions appraisers that while "the service will contain fairly complete information about these properties, including descriptions and brokers' names. . . details about a property's square footage, basement area, or exact age may be inaccurate or excluded." The Appraisal of Real Estate, supra, at 119. In fact, most local residential and commercial real estate listing service websites contain express disclosures about the accuracy of the data and information contained therein. For example, the GSMLS website, relied upon by the expert contains an express disclaimer that the "information [is] deemed reliable but [is] not guaranteed." The rationale behind this disclosure is practical, as the information contained on the website may be reported to real estate sales professionals by unsophisticated third parties and thus, based upon erroneous data or speculation.

Vital to the accuracy and integrity of the sales comparison approach is the premise that information and data must be properly sourced, verified and analyzed to ensure accuracy and to "better understand the attitudes and motivations of the buyer and seller." The Appraisal of Real Estate, supra, at 125. The obligation of an appraiser to collect "accurate, reliable data remains an essential task because the conclusions of the analyses of appraisers are only as good as the data that supports those conclusions." Id. at 95. An appraiser must verify and analyze the data and its sources to ensure accuracy and to "better understand the attitudes and motivations of the buyer and seller." Id. at 125.

Here, the expert failed to verify the integrity of the facts and data upon which he relied, which facts and data formed the basis of his opinions of value for the subject property. The expert did not contact or consult with any comparable sale transaction participants to confirm the sale terms, to inquire whether the seller or buyer were unusually motivated by economic factors to dispose of or acquire the property, or to inquire whether the sale was subject to satisfaction of any

18

conditions. Moreover, the expert seemingly ignored the warning signs contained in the GSMLS property listings that the sellers may have been "under duress" or were otherwise unusually motivated to sell their properties. Stated simply, the expert failed to abide by the fundamental tenets of the sales comparison approach and the requirements mandated by our Legislature under N.J.S.A. 2A:83-1. Thus, because material issues exist as to the accuracy, credibility, and reliability of the market data and information relied upon by the expert in performing his sales comparison approach, the court must accord it no weight.

2. Adjustments

Adjustments must have a foundation obtained from market-derived sources or objective data and not be based on subjective observations and/or personal experience. An appraiser's adjustments "must have a foundation obtained from the market. . ." Greenblatt, supra, 26 N.J. Tax at 55. "[T]he opinion of an expert depends upon the facts and reasoning which form the basis of the opinion. Without explanation as to the basis, the opinion of the expert is entitled to little weight in this regard." Id. at 55.

Here, the expert failed to provide the "why and wherefore" in support of his adjustments. The expert did not provide the court with any support from any market-derived sources or objective data for his location, gross living area, condition, garage, and age adjustments. In the expert's opinion, "from a practical point of view, I felt [a gross living area adjustment of] $30.00 [per square foot] was reasonable." The expert conducted no analysis of the marketplace to discern how size differences of otherwise similarly situated two-family dwellings in the marketplace affected true value. His gross living area adjustments amounted to little more than subjective opinions, lacking any substance or underpinning from market derived sources.

The expert readily admitted that he did not conduct inspections of the interior of any comparable sales, however , noted that, because the GSMLS "indicated that [in comparable sale

one] some work needed to be done, I made a call of $20,000." The expert did not know and could not identify what repairs or renovations were required, did not confer with any transaction participants to ascertain the scope of repairs required, and did not know the cost of repairs to comparable sale one to place it in substantially the same condition as the subject property.

Similarly, the expert acknowledged that he did not conduct an inspection, nor view interior photographs of comparable sale two, however, because it was "sold under duress. . . I felt that it was probably needing repairs, but I don't know all the details of that property."

Although the expert explained that the GSMLS listing for comparable sale three disclosed that it was "well maintained" and located adjacent to the Cranford Township border, his location and age adjustments were entirely subjective. Effective cross-examination disclosed that the expert "did not rely on exact statistical data [in making his adjustments], it was based more on my experience in doing appraisals in Roselle."

When the evidentiary foundation forming the basis of an expert's adjustment is not well-defined or delineated, the court cannot be expected to deduce a value therefrom. The weight to be accorded expert testimony relative to adjustments "depends upon the facts and reasoning which form the basis of the opinion. An expert's conclusion can rise no higher than the data providing the foundation." Inmar Associates v. Edison Township, 2 N.J. Tax 59, 66 (Tax 1980) (citing Passaic v. Gera Mills, 55 N.J. Super. 73 (App. Div.), certif. denied, 30 N.J. 153 (1959)). Consequently, without an adequate understanding of the bases supporting the expert's adjustments, the court is unable to conclude that they are reasonable and therefore, that the expert's concluded opinion of value is credible and reliable.

Nonetheless, the court is mindful of its obligation "to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question." Glen Wall Associates v. Wall Twp., 99 N.J. 265, 280 (1985) (citing New Cumberland

Corp. v. Roselle Borough, 3 N.J. Tax 345, 353 (Tax 1981)). However, to enable the court to make an independent finding of true value, credible and competent evidence must be adduced in the trial record.

Here, the expert's failure to verify the integrity and accuracy of the underlying sales data, and inability to furnish support for his adjustments derived from commercially available resources, objective data, or market sources, renders the conclusions and opinions based thereon patently unreliable. Thus, the court finds that, as a result of the inadequacies in the expert's report and testimony, the record contains insufficient credible evidence for this court to make an independent determination of the true value of the subject property by a fair preponderance of the evidence.

Accordingly, the court concludes that plaintiff has failed to prove, by a fair preponderance of the evidence, that the 2013 local property tax assessment on the subject property exceeds its true market value. Therefore, the court shall enter judgment affirming the 2013 assessment and dismissing plaintiff's Complaint.

Very truly yours,

Hon. Joshua D. Novin, J.T.C.

21