ANDRESINI, J.T.C.
This is the court’s opinion after trial in the above-referenced matter challenging the 2009 assessment on plaintiffs residence.

Findings of Fact

Lesley F. Greenblatt (“Plaintiff’) is the owner of a single-family home on a .49-aere lot located at 50 Walnut Court in the City of Englewood (“Defendant”). The property is designated by the City of Englewood as Block 1601, Lot 8.01 (“Subject Property”). For tax year 2009 the subject property was assessed as follows:
Land 670,300
Imp_550,600
Total $1,220,900
The Ch. 123 ratio for the defendant for tax year 2009 was 95.63%.
Plaintiff challenged the 2009 assessment before the Bergen County Board of Taxation. On June 29, 2009, the Board issued a judgment affirming the assessment, indicating judgment code # 2A (presumption of correctness not overcome).
Plaintiff filed a timely appeal with this court. Defendant did not file a counter-claim. The matter was tried on November 10, *45 2010. Two witnesses appeared at trial: an appraiser called by plaintiff to testify as an expert witness with respect to value of the residential property; and an appraiser called by defendant in the same field. The parties stipulated to the qualifications of both experts, and the court accepted the stipulation.
Based on the experts’ testimony, the court finds that plaintiffs residence was constructed in 1953 and underwent a renovation in 2005. The subject is a 2-story (plus attic) colonial-style home consisting of a living room, kitchen, dining room, den, family room, four bedrooms, three full and one-half baths, a partially finished basement and a 2-car garage. The property is located on a cul-de-sac in a residential neighborhood.
The experts disagreed on the gross living area. Plaintiffs expert testified that the gross living area is 4,197 square feet; defendant’s expert testified that it is 3,743 square feet. Defendant’s expert attributes the difference in the square footage to the area of the attic space, referred to by both experts as the “game room.” Defendant’s expert did not include the square footage of same in his overall calculation because the space is unheated, while plaintiffs expert included the area.
Plaintiffs expert testified that he calculated the gross living area using a tape measure during an in-person visit. A schematic of the measurements he took at the premises is included in his expert report. The schematic reveals that the “game room” measures 12 feet by 40 feet, or 480 square feet. Accepting the measurement as correct, and adding the 480 square feet to the defendant’s square footage, or subtracting from plaintiffs square footage, still leaves a discrepancy of 26 square feet—a discrepancy which the court finds to be insignificant in arriving at the overall value of the subject.
Both appraisers found the subject to be in good condition.
a) Plaintiff’s Expert’s Approach to Valuation
Plaintiffs expert relied on both the market approach (using comparable sales) and the cost approach in arriving at his conclusion of value. He placed most weight on the market approach. *46 He testified that when employing the market approach, he first inspects the subject, taking measurements and photos. He then researches sales in the subject’s market area, selecting those sales which he deems most comparable. Finally, he makes adjustments to the comparable sales price to account for any differences between the subject and the comparable sales. In the instant matter he located four sales, all in Englewood and within close proximity to the subject.
Comparable sale one, located at 99 Booth Avenue, sold on December 18, 2007 for $910,000. The colonial-style residence has a total of sixteen rooms with a gross living area of 4,687 square feet. The expert made significant adjustments to the purchase price. He made an $81,900 negative adjustment for time; a $20,000 negative adjustment for view; a $50,000 positive adjustment for quality of construction; a $100,000 positive adjustment for condition; a $24,500 negative adjustment for gross living area; a $3,000 negative adjustment for finished basement; a $8,000 negative adjustment for number of garages; a $3,000 positive adjustment for a porch; a $10,000 negative adjustment for number of fireplaces; and lastly, a $25,000 negative adjustment for pool and fencing. The gross adjustments on this property total $325,400, while the net adjustment is $19,400—resulting in an adjusted sales price of $890,600.
Comparable sale two, located at 350 Lewelen Circle, sold on August 14, 2008 for $940,000. The ranch-style residence has a total of nine rooms with a gross living area of 3,864 square feet. The expert made substantial adjustments to the purchase price. He made an $18,800 negative time adjustment; a $65,000 negative lot size adjustment; a $20,000 negative view adjustment; a $50,000 positive adjustment for quality of construction; a $10,000 positive adjustment for number of bathrooms; a $16,650 positive adjustment for gross living area; a $3,000 positive adjustment for porch/patio; and a $10,000 negative adjustment for number of fireplaces. The gross adjustments on this property total $193,450, with a net adjustment of $34,150; resulting in an adjusted sales price of $905,850.
*47 Comparable sale three, located at 132 Lydecker Street, sold on August 8, 2008 for $950,000. The colonial-style residence has a total of eleven rooms with a gross living area of 2,828 square feet. As with comparable sale number two, the expert made substantial adjustments to the purchase price. He made a $19,000 negative time adjustment; a $20,000 negative view adjustment; a $25,000 negative adjustment for the quality of construction; a $5,000 positive adjustment for the number of bathrooms; a $68,450 positive adjustment for gross living area; and lastly a $3,000 positive adjustment for porch/patio. The gross adjustments on this property total $140,450, with a net adjustment of $12,450—the result is an adjusted gross sales price of $962,450.
Comparable sale four, located at 474 Valley Place, sold on April 3, 2008 for $1,025,000. The colonial style residence has a total of nine rooms with a gross living area of 4,583 square feet. Plaintiffs expert again made substantial adjustments to the purchase price. He made a $61,500 negative adjustment for time; a $28,000 positive adjustment for lot size; a $10,000 negative adjustment for number of bathrooms; a $34,300 negative adjustment for gross living area; a $3,000 negative adjustment for finished basement; a $3,000 positive adjustment for lack of a porch; and finally, a $10,000 negative adjustment for the number of fireplaces. The gross adjustments on this property total $149,800, with a net adjustment of $87,800—resulting in an adjusted sales price of $937,200.
Defendant’s expert testified that plaintiffs comparable sales two and three were marked as non-usable by the Englewood City Assessor for exclusion from the Director’s sales study program for equalization purposes because the grantor in each of the sales was the estate of the decedent, and therefore the sales do not reflect market value. Plaintiff counters this assertion by stating that each sale was listed on Multiple Listing Services. In addition, the marketing time, that is the time the property was exposed to the market, was 62 days for sale two and 91 days for sale three, which is sufficient to demonstrate that each sale was an arms-length, market value transaction.
*48 Defendant points out that plaintiffs expert’s appraisal report and testimony conclude that the typical market time is estimated to be between three and six months. A time period in excess of the time sale two was exposed to the market, and on the very cusp for sale three. Defendant additionally points out that sale one was on the market for 246 days and sale four was on the market for 701 days; both well in excess of plaintiffs expert’s opinion of the typical market period.
Plaintiffs expert concluded that the value of the subject property is $925,000. This value is also supported by plaintiffs cost approach.
b) Defendant’s Expert’s Approach to Valuation
Defendant’s expert also relied on the market approach in arriving at his valuation conclusion. He relied on three sales, all within the City of Englewood and in relatively close proximity to the subject.
Comparable sale one, located at 362 Eastwood Court, sold on June 6, 2008 for $1,150,000. The residence was constructed in 1959 and has a total of eight rooms with a gross living area of 3,024 square feet. The house is a colonial-style located on a cul-de-sac, as is the subject. The expert made substantial gross adjustments to the purchase price: a $72,000 positive adjustment for gross living area; a $4,000 positive adjustment for lot size; a $25,000 negative adjustment for number of bathrooms; and a $10,000 negative adjustment for amenities. The total gross adjustment equals $111,000, with a net adjustment of $41,000; resulting in an adjusted sales price of $1,191,000.
Comparable sale two, located at 220 Allison Court, sold on July 7, 2008 for $1,250,000. This colonial style home contains ten rooms with a gross living area of 3,444 square feet. The home is located on a cul-de-sac. The appraiser adjusted the sales price by a positive $30,000 for the gross living area; a positive $11,000 for lot size; a negative $25,000 for number of bathrooms; and a negative $5,000 for amenities. The total gross adjustment equals *49 $71,000, with a net adjustment of positive $11,000; for an adjusted sales price of $1,261,000.
Comparable sale three, located at 371 Elton Street, sold on September 12, 2008 for $1,225,000. This 2-story colonial style home contains eight rooms with a gross living area of 2,643 square feet. The appraiser made significant adjustments to the purchase price: a $110,000 positive adjustment for gross living area; a $10,000 positive adjustment for lot size; a $25,000 negative adjustment for number of bathrooms; a $50,000 positive adjustment for partial basement; and a $60,000 negative adjustment for amenities. The total gross adjustment equals $255,000, with a positive net adjustment of $85,000; the resulting adjusted sale price is $1,310,000.
Based on his market approach, defendant’s expert concluded the value of the subject property is $1,250,000.
c) Adjustments
Plaintiffs expert’s adjustment summary provides the following description for his adjustments:
• Site area was adjusted at $100,000 an acre or part of for excess land only. No consideration for sub-division possibilities.
• The square footage of the gross living area of the comparable sales was adjusted at $50.00 per square foot.
• Due to declining property values a negative time adjustment of -1% per month was utilized.
• Located next door to the subject is an abandon (sic) house that is unkept (sic), overgrown and in poor condition overall. This home has been vacant for some time and considered a major eye sore that has effected (sic) the subject’s view and future marketability, therefore adjustments were made under view in the sales comparison analysis and under external in the cost approach.
Plaintiffs expert provides no explanation whatsoever for the following adjustments:
• Quality of construction
• Condition
• Basement
• Garage
• Porch
• Fireplaces
• Fence/Pool
*50 Defendant’s expert’s adjustment summary provides the following description for his adjustments:
Gross Living Area $100 per Square Foot
Lot Size_$100,000 per Acre_
Bathrooms $25,000 per Full Bath/
_$15,000 per Half Bath_
Deck/Enclosed Porch/Patio_$5,000 Each_
Open Porch $5,000 Each
Fireplaces_$10,000 Each_
Full Basement vs. Partial Basement $50,000 Total
In Ground Pool $50,000 Total
Unlike plaintiffs expert, defendant’s expert’s adjustment summary contains a unit value for each type of adjustment he made.

Conclusions of Law

a) Presumption of Correctness
The court’s analysis begins with the well-established principle that “[ojriginal assessments and judgments of county boards of taxation are entitled to a presumption of validity.” MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J.Tax 364, 373 (Tax 1998). As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as follows:
The presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be “definite, positive and certain in quality and quantity to overcome the presumption.”
Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413, 495 A.2d 1308 (1985) (citations omitted)).
The presumption of correctness arises from the view “that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with *51 law.” Pantasote, supra, 100 N.J. at 413, 495 A.2d 1308 (citing Powder Mill, I Assocs. v. Township of Hamilton, 3 N.J.Tax 439 (Tax 1981)); see also Byram Twp. v. Western World, Inc., 111 N.J. 222, 544 A.2d 37 (1988). The presumption remains “in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity.” Transcontinental Gas Pipe Line Corp. v. Township of Bernards, 111 N.J. 507, 517, 545 A.2d 746 (1988) (citation omitted).
“The presumption of correctness of a county board’s tax assessment judgment stands, until sufficient competent evidence to the contrary is adduced.” Little Egg Harbor Twp. v. Bonsangue, 316 N.J.Super. 271, 285-86, 720 A.2d 369 (App.Div.1998) (citation omitted); see also Atlantic City v. Ace Gaming, LLC, 23 N.J.Tax 70, 98 (Tax 2006). “In the absence of a R. 4:37-2(b) motion ... the presumption of validity remains in the ease through the close of all proofs.” MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence “as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion.” Ibid. The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 666 A.2d 146 (1995)).
In order to overcome the presumption, the evidence “must be ‘sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.’ ” West Colonial Enters., LLC v. City of East Orange, 20 N.J.Tax 576, 579 (Tax 2003)(quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J.Tax 405, 408 (Tax 1999), aff'd, 18 N.J.Tax 658 (App.Div.), certif. denied, 165 N.J. 488, 758 A.2d 647 (2000)). Only after the presumption is *52 overcome with sufficient evidence at the close of trial must the court “appraise the testimony, make a determination of true value and fix the assessment.” Rodwood Gardens, Inc. v. City of Summit, 188 N.J.Super. 34, 38-39, 455 A.2d 1136 (App.Div.1982) (citations omitted). If the court determines that sufficient evidence to overcome the presumption has not been produced, the assessment shall be affirmed and the court need not proceed to making an independent determination of value. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312, 604 A.2d 580 (1992); Global Terminal & Container Serv. v. City of Jersey City, 15 N.J.Tax 698, 703-704 (App.Div.1996).
The court finds that plaintiff has produced sufficient evidence to overcome the presumption of correctness attached to the County Board judgment for 2009. If taken as true, the opinion of the experts and the facts upon which they relied create a sufficient question regarding the correctness of the County Board judgment for 2009 to allow the court to make an independent determination of the value of plaintiff’s property.
b) The Theory of Valuation
A finding that a party has overcome the presumption of correctness does not equate to a finding that the County Board judgment for 2009 is erroneous. To the contrary, overcoming the presumption merely permits the court to address the question of what value should be accorded to plaintiffs property as of the operative valuation date. Once the presumption is overcome, the “court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence.” Ford Motor Co., supra, 127 N.J. at 312, 604 A.2d 580. Our Supreme Court has held that “although there may have been enough evidence to overcome the presumption of correctness at the close of plaintiffs case-in-ehief, the burden of proof remain[s] on the taxpayer throughout the entire case ... to demonstrate that the judgment under review was incorrect.” Id. at 314-15, 604 A.2d 580 (citing Pantasote Co., supra, 100 N.J. at 413, 495 A.2d 1308). The court will, therefore, *53 proceed to review the evidence to ascertain if plaintiff has carried its burden.
The market approach (comparable sales) is generally accepted as an appropriate method of estimating value for a residence. Brown v. Borough of Glen Rock, 19 N.J.Tax 366, 377 (App.Div.2001). The sales comparison approach is the most common technique for valuing sites, and it is the preferred method when comparable sales are available. Appraisal Institute, The Appraisal of Real Estate, 363 (13th ed.2008). (See generally Genola Ventures-Shrewsbury v. Borough of Shrewsbury, 2 N.J.Tax 541, 551 (1981)) This method of valuation has been defined as “the process of deriving a value indication for the subject property by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales price (or unit prices, as appropriate) of the comparable properties based on relevant, market-derived elements of comparison.” The Appraisal of Real Estate, supra, at 297.
The market approach is applicable to all types of real property interests when there are sufficient recent, reliable transactions to indicate value patterns and trends in the market. For property types bought and sold regularly, the market approach often provides a supportable indication of market value. When data is available, this is the most straight forward and simple way to explain and support an opinion of market value. Id. at 300. The court finds the market approach to be the best method for determining the true value of plaintiffs property.
c) Plaintiff s Analysis
As stated above, plaintiffs expert relied on four comparable sales. To each of the sales he applied the adjustments set forth above. Defendant did not object to the plaintiffs appraisal report being admitted into evidence, though he questioned the reliability of the two (2) estate sales-eomparable sales two and three.
*54 The reasoning as to why estate sales may be suspect and requme a higher degree of scrutiny is succinctly set forth in the N.J. Tax Assessors Handbook, at page x-22, where it states:
The general reason for excluding sales from an executor is that generally sales prices in such transactions often are the result of an attempt to expeditiously settle and dispose of an estate and thereby may very well not reflect the true market value.
Market value has been defined as: The most probable price, as of a specific date, in cash, or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all the conditions requisite to a fair sale with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under duress.
As it is the defendant that is putting the issue of the reliability of sales two and three into question, it is defendant’s burden to prove that the sales do not reflect “market value”. Simply saying that a sale was determined by the assessor to be non-useable for purposes of the Director’s sales ratio study does not render the sale non-useable for valuation purposes. One opposing the sale must demonstrate with competent credible evidence that the sale does not reflect true market value. I find defendant has not met this burden.
Plaintiff's expert was qualified by the court as an expert in real property valuation, thereby permitting him to offer opinion testimony. However, being qualified as an expert is but the first part of accepting an expert’s opinion. As was stated in Rosenberg v. Tavorath, 352 N.J.Super. 385, 800 A.2d 216 (App.Div.2002):
In addition to determining whether a witness is qualified to testify as an expert, the trial court must also decide the closely related issue as to whether the expert’s opinion is based on facts and data. Biunno, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 702 (2002). As construed by applicable case law, N.J.R.E. 703 requires that an expert’s opinion be based on facts, data, or another expert’s opinion, either perceived by or made known to the expert, at or before trial (citations omitted) ... The rule requires an expert “to give the why and wherefore” of his opinion, rather than mere conclusions. Jimenez v. GNOC Corp., 286 N.J.Super. 533 [670 A.2d 24] (1996).
In Dworman v. Tinton Falls, 1 N.J.Tax 445 (Tax 1980), this court established that “[t]he opinion of an expert depends upon the facts and reasoning which form the basis of the opinion. Without explanation as to the basis, the opinion of the expert is entitled to little weight in this regard.” Id. at 458. Thus an *55 expert’s opinion is only as good as the data upon which the expert relied.
I find that plaintiffs expert has failed in the “whys and wherefores” in support of his value. By way of example, his adjustment for site area is $100,000 per acre. He does not provide the source for his dollar adjustment. He offers no vacant land sales and no sales of residentially improved property with excess land; nor does he provide a land residual analysis[2] from which to measure the validity of the adjustment In total, not a scintilla of support is provided; no “whys” and no “wherefores” by which his adjustment can be measured. The same conclusion holds true for each of his adjustments. These adjustments must have a foundation obtained from the market, and where appropriate, supported by cost manuals. I find these adjustments lacking in any, much less sufficient, market derived support. Without an explanation of the methodology and assumptions used in arriving at the experts adjustments, the court is constrained to place “little weight” on the expert’s opinion. See Dworman, supra.
Similarly, defendant’s expert’s adjustments suffer the same maladies; the lack of “whys” and “wherefores.” Mere naked assertions as to dollar amount adjustments do not carry the day. Thus defendant’s expert’s opinion, too, is of little assistance to the court in its attempt to assign market value to the subject property.
Since the probative value of an expert’s opinion must stand or fall upon the facts and reasoning offered in support of that opinion, I am not convinced by the appropriate standard of proof that plaintiffs and defendant’s respective adjustments were appropriately devised and adequately supported in this matter. Based on the foregoing, I am constrained to reject the sales comparison approach methodology as presented by each of the parties.
*56 Additionally, and for the same reasoning-lack of support-that I rejected plaintiffs sales comparison approach, I reject plaintiffs cost approach. Plaintiff’s expert offered not one word of testimony as to his cost approach. All that the court is provided with is one line in the appraisal report that states, “all costs derived from builder’s estimates are considered typical for the area, including price per square foot of GBA.” There are no details or explanations regarding the identity of the builders, on what their estimates are based, or what constitutes the definition of “area”. Again, plaintiffs expert fails to provide the “whys” and “wherefores”. Without testimony answering these questions I must reject his totally unsupported cost approach. See Dworman, supra.
Accordingly, the evidence adduced in this matter does not permit me to conclude an appropriate value by a fair preponderance of the evidence.
I am mindful of my obligation to utilize my knowledge and expertise, see Glen Wall Assoc. v. Wall Tp., 99 N.J. 265, 280, 491 A.2d 1247 (1985), in conjunction with the valuation data submitted by the parties in an effort to ascertain an appropriate value for the property in question. An appropriate value and tax assessment, however, can only be deduced when there is sufficient substantial and competent evidence in the record to support that determination. See Samuel Hird, & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 74, 208 A.2d 153 (App.Div.1965). The court finds that the record is void of sufficient and competent evidence from which the court can base a determination of trae value.
Therefore, the Clerk of the Tax Court is directed to dismiss the complaint filed in this matter for failure to sustain the requisite burden of proof necessary to alter the assessment for tax year 2009.

 The land residual technique allows an appraiser to estimate the land values when recent data on land sales is not available. Appraisal Institute, The Appraisal of Real Estate, 512 (13th ed.2008).