TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:  (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

February 5, 2018

**<u>UPLOADED AND BY FIRST-CLASS MAIL</u>**
James H. Coefield, Self-Represented
Lakewood, New Jersey

**<u>UPLOADED</u>**
Lani Lombardi, Esq.
Cleary Giacobbe Alfieri Jacobs, L.L.C.
251 Preventorium Road, P.O. Box 580
Howell, New Jersey 07731

> Re:   Coefield v. Township of Lakewood
> Block 189.07, Lot 9
> <u>Docket No. 011200-2017</u>

Dear Mr. Coefield and Counsel:

This letter constitutes the court's decision following trial of the above captioned matter.

Plaintiff owns a residence, the above-captioned property ("Subject"), in defendant ("Township").

For tax year 2017, plaintiff petitioned the Ocean County Board of Taxation ("County Board") to

reduce the Subject's local property tax assessment from $410,900[1] (allocated $187,000 to land,

and $223,900 to improvements) to $230,000.[2]  The County Board reduced the assessment to

$395,000.  For the reasons stated below, this court affirms the County Board's judgment.

At trial, plaintiff, a licensed real estate agent, provided a photograph of the exterior of the

Subject, reflecting a ranch-style house with an attached one-car garage on a lot sized 264x112

---

[1] For tax year 2017, the Township underwent a district-wide revaluation.
[2] The assessment for tax years 2014-2016 was $245,000 (allocated 114,800 to land and $131,100 to improvements).

*

square feet ("SF").  The house has three bedrooms and 2½ bathrooms, with gross living area ("GLA") of 1,812 SF, and a basement.  He stated that the house, though built in 1979, was well maintained.

Plaintiff relied upon five sales, which he claimed were comparable in terms of location and living area.  All were located within the Township, and their sales occurred as of, or proximate to, the assessment date of October 1, 2016.  Those sales were as follows:

| | Address | Built | Lot Size | GLA | Sale Date | Sale Price | Room Count | Other |
|---|---|---|---|---|---|---|---|---|
| 1 | 1249 Medina Rd | 1972 | 0.142 ac | 1,982 SF | 12/20/16 | $228,629 | 5 bed; 2½  bath | No basement |
| 2 | 70 E. 9th Street | 1998 | | 2,302 SF | 07/13/16 | $235,000 | 2 bed; 3 bath | Demolished post-sale |
| 3 | 1511 Long Beach | 1973 | 0.373 ac | 1,992 SF | 11/29/16 | $146,187 | 3 bed; 2 bath | No basement |
| 4 | 1517 Laguna Lane | 1974 | | 5,312 SF | 06/22/16 | $312,000 | | |
| 5 | 900 Monmouth Ave | | 0.258 ac | 5,309 SF | 07/29/16 | $215,000 | | |

The room count information was from plaintiff's testimony who drove by comparable 1 and 4 (the latter one at night).  The source for the remaining data was from a web-based information service available to real estate agents on a paid-subscription basis by a company called Professional Assurance Company.  The information included a google-powered street view picture of the comparable, its address, lot size, GLA, year built, assessment/tax information, and sales history (date, price, parties, recording).  Also included was the locality's demographics, as well as the information provider's value calculation based on the median prices of over 300 residential properties sold for over $25,000 within the last 18 months in the 08701 zip code, reduced to a per-square-foot ("PSF") number.  The information was the copyright of "PropertyShark.com" and the disclaimer noted that the data "comes from government sources" and that the "only authoritative source for the information in this report is the government agencies from which the data was acquired."  However, the disclaimer noted that "[n]o attempt has been made to validate it" nor was any "attempt . . . made to validate the accuracy of the programming of the website."

Cross-examination revealed comparable 3 was a two-story home per the web-based information plaintiff relied on, which plaintiff termed as a "shasta ranch." Comparable 5 was a two-story home with a gable roof. After his cross-examination, plaintiff withdrew his reliance upon comparable 2, therefore, the same was not considered as evidence. Plaintiff, instead stated he would rely upon a comparable listed by the Township (if it chose to put its proofs), 1213 Medina Road, which sold 07/14/2016 for $320,000. The one-story home built in 1979 with one bedroom and 2 bathrooms, a GLA of 1,496 SF, no basement and a one-car garage, situated on a 75x143 SF lot, was converted to a house of worship soon thereafter pursuant to a July 2016 resolution (opposed by plaintiff along with other home owners due to potential traffic congestion and other issues which plaintiff claimed lowered property values). As of the assessment date, the comparable was converted to a house of prayer and is now exempt from tax. The County Board's property record website shows that the comparable was sold 11/13/2013 for $10 from an individual to a Trust, which then sold the property in July 2016 to Bais Medrash of Medina Road, Inc. Plaintiff provided a photograph he took on 06/05/2017, of the exterior (front) of this comparable which also showed construction material alongside. Plaintiff maintained that based the above comparables, the Subject's value should be $320,000 or lesser.

As rebuttal, the assessor testified that comparable 1213 Medina Road, was vacant in 2015, the revaluation company had inspected the same in connection with the 2017 revaluation, and that he had inspected the home in September of 2017 in connection with that property's claim for tax exemption. He maintained that a change in use, such as with this comparable, would impact the sale price of the property.

## FINDINGS

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J.Super. 271, 285-86 (App. Div. 1998).

A taxpayer can rebut the presumption by introducing "cogent evidence," i.e., evidence which is one that is "definite, positive, and certain in quality and quantity." Pantasote, supra, 100 N.J. at 413. Plaintiff must present the court with "evidence sufficient to demonstrate the value of the subject property, thereby raising a debatable question as to the validity of the assessment." MSGW, supra, 18 N.J. Tax at 376. Disagreement with an assessment must be "based on sound theory and objective data rather than on mere wishful thinking." Ibid.

If the court decides that the presumptive correctness is overcome, it can find value based "on the evidence before it and the data that are properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985). The complainant bears the burden of persuading the court that the "judgment under review" is erroneous. Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15 (1992).

If, at the close of plaintiff's proofs, the court is presented with a motion to dismiss under R. 4:37-2(b), in evaluating whether plaintiff's evidence meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." MSGW, supra, 18 N.J. Tax at 376. If the court decides that

the plaintiff did not overcome the presumptive correctness, then the assessment should be affirmed. Ibid. Thus, if a party has not met this burden, the trial court need not engage in a further evaluation of the evidence to make an independent determination of value.

The market approach (or using comparable sales) is the generally accepted appraisal methodology to determine value of residential homes. See Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013) (the comparable sales method is generally appropriate for valuation of a residential property where value is derived "by comparing similar properties that have recently sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sales prices . . . of the comparable properties based on relevant, market-derived elements of comparison"). Market evidence must support any element of comparison that causes "value differences." Id. at 378.

While plaintiff correctly chose sales of residences located in the Township whose sale date was proximate to the assessment date, deeming them comparable to the Subject based simply upon GLA and similar lot size, oversimplifies the valuation technique and process, and the need for qualitative cogent evidence. At least two comparables were not single story homes. There was no evidence showing the interior features or condition of the comparables or of the Subject. Value is not a rough average of the unadjusted sale prices of relatively similar types of homes, and valuation is not a mathematical exercise. Amenities present or absent in a comparable may or may not add value to that property. See U.S. Life Realty Corp. v. Township of Jackson, 9 N.J. Tax 66, 72 (Tax 1987) ("differences between a comparable . . . and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other."). The court has no way of knowing whether there were

5

elements of comparability that required adjustments to the sale prices to account for superior or inferior features or conditions in either the Subject or the comparables. Presuming they are all in the same condition (thus, their sale prices do not require any adjustments), is not competent or credible evidence.

Additionally, comparable 5 is listed on the County Board's website as being in the R-M zone as opposed to the Subject's zone (R-20), the former allowing multi-family residences such as duplexes and the latter permitting only single family homes. The highest and best use of a comparable becomes a prima facie issue where the zoning is not the same as the subject property since differing uses pose a disparity in terms of maximal productivity of the Subject and the comparable. Cf. Thomas J. Lipton, Inc. v. Township of Raritan, 10 N.J. Tax 202, 210 (Tax 1988) (sales of vacant properties which may be required to be "adapt[ed . . . to different . . . uses" such as "conversion to multitenant use are not comparable sales"), aff'd, 11 N.J. Tax 100 (App. Div. 1989). Without credible testimony supported by objective proofs, properties located in differing zones are not necessarily comparable. Nothing was provided to the court to indicate that the zoning differences were of no significance for valuation purposes

For the similar reason, namely, differing uses, plaintiff's reliance on the Township's proposed comparable (1213 Medina Road) is unpersuasive. A house of worship (as of the assessment date) even if a residence is not exposed to the market as would the Subject. There was no evidence that the sale between the Trust and the presumably non-profit entity (since properties used for religious purposes are afforded tax exemptions only if they are owned by non-profit corporate entities, see N.J.S.A. 54:4-3.6), was exposed to the market.

6

Finally, all comparables were marked with a non-usable ("NU") code number.[3] Comparable 1 was marked NU-31 which applies to a "[f]irst sale after foreclosure by a Federal or State chartered financial institution." See N.J.A.C. 18:12-1.1(a)(31). Comparable 2 was marked NU-26 which applies to "[s]ales that . . . are not considered to be between a willing, knowledgeable buyer, not compelled to buy, and a willing, knowledgeable seller, not compelled to sell." N.J.A.C. 18:12-1.1(a)(26). Comparable 3 was marked NU-1 which applies to "[s]ales between immediate family members." N.J.A.C. 18:12-1.1(a)(1). Plaintiff's web-based data shows that on 11/29/16, there were two sale transactions between the same parties, who appear to be related, one for $146,187 and one for $1. Comparable 4 was marked NU-7 which applies to "sales of property substantially improved subsequent to assessment and prior to the sale thereof." N.J.A.C. 18:12-1.1(a)(7). Comparable 5 was marked NU-28 which applies to "[s]ales of property subject to leaseback arrangements." N.J.A.C. 18:12-1.1(a)(28).[4]

The NU codes assigned to each comparable raises a question whether they were arms-length transactions between a willing buyer and a willing seller, neither under a compulsion to buy or sell. This does not automatically prohibit the consideration of the sales as comparables. However, if "non-market conditions of sale are detected in a transaction, the sale can be used as a comparable sale but only with care," thus, the "circumstances of the sale must be thoroughly

---

[3] In developing a credible sales-to-assessment ratio to be used in developing the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Director, Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted). The sales-to-assessment ratio is used to determine the "state school aid distribution," the "assessment discrimination claims by property owners," and also is "adopted in county equalization tables . . . which are used to allocate the cost of county government among a county's municipalities." Id. at 666.

[4] Although plaintiff's web-based data claimed its "only authoritative source" was government records, it failed to reflect the NU codes assigned to each sale, despite the fact that the County Board's website identified those codes.

researched . . . [, and any] adjustment should be well supported with data," otherwise the sale should be "discarded" as a comparable.  See The Appraisal of Real Estate, supra, at 410.

Plaintiff was unable to establish why the comparables were reliable indicators of value regardless of their non-usable categorization.  He did not personally verify the circumstances of the sale for any comparable, but relied upon what he believed to be the veracity and integrity of the web-based data.  However, that data did not provide any information other than the sale price, sale date, and parties to the sale.  None of this information permits a conclusion that the sales were arms-length, which would require disregarding the NU code.  The web-based data does not identify which government authority it used as a source for its data and explicitly disclaims verification of the same.  Plaintiff's reliance on the web data does not circumvent the obligation to ensure that a sale was an arms-length one, such that neither the buyer nor seller is under a compulsion to buy or sell.  As explained by this court, "[v]ital to the accuracy and integrity of the sales comparison approach is the premise that information and data must be properly sourced, verified and analyzed to ensure accuracy and to 'better understand the attitudes and motivations of the buyer and seller.'" VBV Realty, L.L.C. v. Township of Scotch Plains, 29 N.J. Tax 548, 564 (Tax 2017) (citation and quotation marks omitted) (rejecting a real estate appraiser's comparable sales because the expert relied on the sales information posted on a County Board's website, MLS listings, and from his discussions with the tax assessors).  The court also noted that the Monmouth County Board of Taxation's website contained an explicit disclaimer that the website's information is "not warranted or guaranteed in any way," especially as to "the accuracy, adequacy, quality, currentness, validity, completeness, or suitability of any data for any purpose." Id. at 563 (website address omitted).  See also N.J.S.A. 2A:83-1 (a witness providing testimony relating to comparable sales should obtain information from the "owner, seller, purchaser, lessee or occupant . . . or from

8

information obtained from the broker or brokers or attorney or attorneys who negotiated or who are familiar with or cognizant of such sales").

The burden is upon plaintiff to show that the sale he deems comparable is a reliable indicator of the Subject's market value.[5] The court cannot accept a comparable sale without any verification of its bona fides. See Glen Wall Associates v. Township of Wall, 99 N.J. 265, 282 (1985) (the court must "appraise the circumstances surrounding a sale to determine if there were special factors which affected the sale price without affecting the true value").

In sum, plaintiff's reliance upon the unadjusted sale prices of the comparables because they are the same or similar to the Subject in terms of GLA and lot size, is not persuasive evidence of their comparability with the Subject, which would be sufficient to render them credible indicators of the Subject's value. Providing a list of comparable sales with unadjusted sale prices, and asking the court to reduce the assessed value of the Subject somewhere between such sale prices, does not meet a taxpayer's burden of providing "sufficient competent evidence of true value of the (subject) property." See Siegfried O. v. Township of Holmdel, 20 N.J. Tax 8, 20 (Tax 2002).

The court is mindful that it must strive to find value. However, as stated in Township of Warren v. Suffness, 225 N.J. Super. 399, 414 (App. Div. 1988), "the Tax Court's right to make an independent assessment is not boundless," but must be "based on the evidence before it and the data that are properly at its disposal." (citation and quotation marks omitted). Thus, the court

---

[5] Of course, if plaintiff showed the court with credible evidence that each sale with the NU code was verified as being arms-length despite existence of any factors indicating or implying a non-market sale, the Township cannot simply rest on an opposition that the sale is unreliable because it was treated as non-useable by the assessor in developing the Chapter 123 ratios. See Greenblatt v. City of Englewood, 26 N.J. Tax 41, 54 (Tax 2010) ("Simply saying that a sale was determined by the assessor to be non-useable for purposes of the Director's sales ratio study does not render the sale non-useable for valuation purposes."). But plaintiff must first satisfy this court of the sale's reliability. Here, this was not done.

9

cannot "arbitrarily assign a value to the property not supported in the record." <u>Ibid.</u> (citation and quotation marks omitted). Here, there was no such credible evidence for the court to independently conclude the Subject's value.

**<u>CONCLUSION</u>**

For the aforementioned reasons, the court finds that plaintiff has failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Mala Sundar, J.T.C.