NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY



KATHI F. FIAMINGO
JUDGE

120 High Street
Mount Holly, NJ 08060
(609) 288-9500 EXT 38303

March 28, 2022

Warren S. Jones, Jr., Esq.
Law Office Of Warren S. Jones, Jr., LLC
1 Trinity Lane
Mount Holly, NJ 08060

Eileen K. Fahey, Esq.
302 N. Washington Ave., Suite 202E
Moorestown, NJ 08057

RE:   Eli Lander, et al. v. Township of Maple Shade
      Docket No. 005639-2021

Counsel:

This letter constitutes the court's opinion after trial in the above-referenced matter

challenging the assessment of plaintiff's property for tax year 2021.  For the reasons stated below,

the assessment is affirmed.

## I.   Procedural History and Factual Findings

The court makes the following findings of fact based on the evidence and testimony offered

at trial in this matter.   The property in question has the street address of 26 Morris Avenue,

Branchburg, N.J. and is designated as Block 84 Lots 1 and 2 on the official tax map of Branchburg

Township ("subject property")[1].  The subject property consists of 2.77 acres of unimproved land.

---

[1] Although the appeal in this matter refers only to Lot 1, the second lot, referred to as Lot 2 in the appraisal report, and as additional Lot 1.2 on the SR1-A submitted with the complaint, is also included in this appeal.



*





The subject property is a corner property having 70 feet of frontage along Morris Avenue to the south and 350 feet of frontage on Pine Street on its eastern border. It is bounded by railroad tracks along its northern border and a private property to the west. The subject property is located in the BD (Business Development) zone of Maple Shade Township. This BD zone permits a variety of uses designed to provide for a broad range of nonresidential uses. The subject is located within an area known as the Maple Shade Industrial Park located off N.J. State Highway Route 73.

For the tax year under appeal, the subject property was assessed as follows:

| | |
|---|---|
| Land: | $ 198,100 |
| Improvements: | $ 0 |
| Total: | $ 198,100 |

The average ratio of assessed to true value, commonly referred to as the Chapter 123 ratio, for the Township of Maple Shade (herein "defendant" or "Township") for the tax year in question is listed by the State of New Jersey Department of the Treasury, Division of Taxation as 91.01%.[2]

Plaintiff appealed the assessment for the year in question to the Burlington County Board of Taxation, which found that plaintiff failed to overcome the assessment's presumption of correctness. Plaintiff thereafter appealed the judgment of the County Board to this court.[3]

At trial plaintiff presented testimony from an appraisal expert, who was accepted without objection as an expert, and from one of the owners of the subject property. The Township presented the testimony of its assessor.

---

[2] The implied equalized value would be $198,100/.9101 = $217,668.
[3] Defendant initially filed a motion to dismiss the matter for failure to prosecute at the County Board, which plaintiff opposed. After review the court determined that a plenary hearing was required. Defendant thereafter withdrew its motion and the matter proceeded to trial on its merits.

II.    Plaintiff's expert testimony

Plaintiff's expert testified that he concluded a value for the subject property of $70,000 as of October 1, 2020, the applicable valuation date.  In reaching this conclusion plaintiff's expert testified that although he reviewed sales of over twenty properties for the applicable valuation period, "he could not find any sales that were comparable to the geographical conditions of the subject property."  By way of explanation the expert testified that the subject property was like a "hole in the ground" because the only "legal" access to the subject property was via Pine Street which was 10 to fifteen feet above the property.  The expert testified that although the subject property has a street address on, and had frontage on, Morris Avenue, that thoroughfare was a private street over which plaintiff had no access.  Thus the expert determined that the only legal access to the subject property was via Pine Street.

Plaintiff's expert testified that he was unable to locate truly comparable properties because none of the sales he reviewed had the same physical limitations as the subject property.  All of the sales reviewed had street level access and were easily developable.  Nonetheless, the expert chose three properties as comparable sales.

Comparable sale one had approximately 126 feet of frontage along "heavily traveled six-lane Route 130" adjacent to a shopping center.  Comparable sale two was located on "heavily traveled Route 206, in proximity to a motel and a convenience store.  Comparable sale three was also located on Route 206 and consisted of 1.9 acres upon which a 6,000 square foot industrial building with offices was located.  With respect to this latter sale, the expert testified that he adjusted the sale to reflect the inclusion of the 6,000 square foot improvement with reference to the property tax assessment's division between land and improvements.  That is, the expert applied the percentage of improvement to total assessment as reflected in the tax assessment for

3

comparable sale three. The expert did not make any independent determination to extract the value of the improvement from the comparable sale and provided no other support for his use of the tax assessment as the basis for this adjustment.

The expert testified that he was unable to locate a truly comparable property due to what he considered the unique physical limitations of the subject property. Thus, the expert chose the three comparable sales noted above despite their access to heavily traveled roadways and made adjustments of -75% for "location" to comparable sales one and two; and -65% location adjustment to comparable sale three. The expert made an additional -10% adjustment to comparable sale three for "physical characteristics."

The expert testified that the location adjustments were made to account for the fact that the subject property was "ten to fifteen feet below centerline" on Pine Avenue and because the subject property does not front on a major highway. The expert did not account for the fact that the subject property was level with, and fronted on, Morris Avenue because he determined that Morris Avenue was a private road upon which plaintiff could not legally traverse.

Plaintiffs' expert did not explain how he determined that the subject property had no access along Morris Avenue. He testified that he did not review plaintiff's deed or any of the deeds to plaintiffs' predecessor in interest. He further testified that although he checked the public records he could not locate the plaintiff's deed. Apparently, he did not request that plaintiffs produce a copy of their deed or any other support for his conclusion that the subject property had no access over Morris Avenue. It appears the expert concluded that the subject property had no right of way over Morris Avenue solely by virtue of the fact that Morris Avenue is designated as "private" on the Tax Map and did not perform any independent investigation to confirm this physical limitation which figured so largely in his conclusion of value.

As noted the expert made a location adjustment of -75% to comparable sale one and comparable sale two, and a -65% location adjustment to comparable three.[4] The expert did not provide any objective basis for the amount of the location adjustments. The expert opined that the subject property had "very little value in its present situation being that it is a hole in the ground." He then used his experience in the appraisal industry to arrive at the location adjustment. In doing so the expert testified that although he concluded a highest and best use for the subject property was low-intensity commercial, the property's real use was "to hold the earth together." He further described the subject property as looking as if it had been hit by a meteor.

Notably, plaintiffs' expert provided no photographic evidence of these dramatic observations. The only photos of the subject property provided by the expert were street views which depicted only the trees along bordering the subject property taken at a distance. No views depicting the dramatic incline of the subject property from Pine Street, or the "meteor strike" nature of the subject property which figured so significantly in the expert's opinion were provided.[5] Thus the court had little upon which to assess the physical condition of the subject property save the expert's descriptions.

The expert testified that he made a -10% adjustment to comparable sale three for the difference in "physical" attributes to the subject property. He testified that comparable three was smaller than the subject property, and therefore would demand a higher price per acre. The expert testified that smaller properties in general demand a higher price per acre than larger parcels. The expert did not provide an objective basis for his determination that a -10% adjustment for this

---

[4] The court was unable to discern any rationale for the location adjustment of -75% to comparable sales one and two and -65% to comparable sale three.

[5] Each photograph provided by the expert in the appraisal shows only the tree line bordering the subject property from a distance, and no interior views of the subject property were provided.

difference was warranted, again relying instead on his fifty years of experience in the real estate business.

Plaintiffs also offered the testimony of one of the owners of the subject property. This witness testified that at some point after the subject property was purchased it was put up for sale, but that no offers were received during the last fifteen years. Notably, this fact witness testified that despite having owned the subject property for more than thirty-two years he did not know that he needed permission to access the subject property from Morris Avenue or that it was a private road. He only became aware that Morris Avenue was not a public roadway upon being told of that fact by the expert. The witness testified that in all the years that plaintiffs owned the subject property they were never denied access to the subject property from Morris Avenue. He further testified that when purchased it had been plaintiffs' intention to develop the subject property with access from Morris Avenue, in the same manner as the adjacent properties. The witness also testified that he had always utilized Morris Avenue to access the subject property and had never been denied access.

On cross examination the witness testified that he had no knowledge of whether or not plaintiffs had an easement to use Morris Avenue. He also identified an advertisement by which plaintiffs had listed the subject property to sale with a realtor. Notably, the advertisement contained an overhead view of the subject property depicting an essentially rectangular undeveloped lot bordered by trees. Taken from what appears to be a significant distance, the overhead shot does not provide any topographical information which would confirm or rebut the description of the subject property provided by the expert. Plaintiffs' fact witness did not testify to any of the physical limitations described by the expert witness.

B.    Defendant's Testimony

Defendant provided the Tax Assessor for the township of Maple Shade. The assessor identified the deed by which plaintiff obtained title, and a deed from a predecessor in interest by which a perpetual easement over Morris Avenue was granted to the grantee and the grantee's "successors and assigns."

II.    Conclusions of Law

A.    Presumption of Validity

The court's analysis begins with the well-established principle that "[o]riginal assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as follows:

> The presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."
>
> [Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)(citations omitted)).]

The presumption of correctness arises from the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Pantasote, 100 N.J. at 413 (citing Powder Mill, I Assocs. v. Township of Hamilton, 3 N.J. Tax 439 (Tax 1981)); see also Byram Twp. v. Western World, Inc., 111 N.J. 222 (1988). The presumption remains "in place even if the municipality utilized a flawed valuation methodology, so long as the

quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity." Transcontinental Gas Pipe Line Corp. v. Township of Bernards, 111 N.J. 507, 517 (1988) (citing Pantasote, 100 N.J. at 415).

"In the absence of a R. 4:37-2(b) motion . . . the presumption of validity remains in the case through the close of all proofs." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence "as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion." Ibid. The court must accept as true the proofs of the party challenging the assessment and accord that party all legitimate favorable inferences from that evidence. Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995)). In order to overcome the presumption, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div.), certif. denied, 165 N.J. 488 (2000)).

Here, the court finds that plaintiff has not overcome the resumption of correctness. The evidence presented by plaintiff's expert is not sufficient to determine the value of the subject property, or establish a debatable question as to the correctness of the assessment.

Here plaintiffs' expert utilized the sales comparison approach to determine the fair market value of the subject property. The sales comparison approach involves a "comparative analysis of

properties" and requires the expert to focus on the "similarities and differences that affect value…which may include variations in property rights, financing, terms, market conditions and physical characteristics." Id. at 378. It is "the most straight forward and simple way to explain and support an opinion of market value." Greenblatt v. Englewood City, 26 N.J. Tax 41 (Tax 2011)(citing Appraisal Institute, The Appraisal of Real Estate 300 (13th ed. 2008)).

Under the sales comparison approach, market value is obtained "by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract." Appraisal Institute, The Appraisal of Real Estate, 377 (14th ed. 2013). Using various analysis techniques such as "paired data analysis, trend analysis, statistics, and other techniques" the appraiser focuses on similarities and differences that affect value . . . which may include variations in property rights, financing terms, market conditions and physical characteristics." Id. at 378.

In considering an expert's opinion of value, the weight afforded to the expert's testimony relative to adjustments "depends upon the facts and reasoning which form the basis of the opinion. An expert's conclusion can rise no higher than the data providing the foundation (citation omitted). If the bases for the adjustments are not made evident the court cannot extrapolate value." Inmar Associates v. Edison Township, 2 N.J. Tax 59, 66 (Tax 1980). "Without explanation as to the basis, the opinion of the expert is entitled to little weight in this regard." Dworman v. Tinton Falls, 1 N.J. Tax 445, 458 (Tax 1980) (citing to Passaic v. Gera Mills, 55 N.J. Super. 73 (App. Div. 1959), certif. denied, 30 N.J. 153 (1959)). In order for an expert's testimony to be of any value to the trier of fact, it must have a proper foundation. See Peer v. City of Newark, 71 N.J. Super. 12, 21 (App. Div. 1961), certif. denied, 36 N.J. 300 (1962). When "an expert offers an opinion without providing specific underlying reasons . . . he ceases to be an aid to the trier of fact." Jimenez v.

GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). An expert witness is required to "give the why and wherefore of his expert opinion, not just a mere conclusion." Ibid.

Moreover, "[i]t is well settled in the realm of tax appeals that an expert's reliance on subjective measures for calculation and application of adjustments is unacceptable." Greenblatt v. Township of Englewood, 26 N.J. Tax 41, 55 (Tax 2012) ("adjustments must have a foundation obtained from the market" with an "explanation of the methodology and assumptions used in arriving at the [] adjustments []" otherwise they are entitled to little weight). In Dworman v. Borough of Tinton Falls, 1 N.J. Tax 445, 458.

Plaintiff's expert's conclusion of value is based on significant adjustments made to achieve "comparability." Importantly, plaintiffs' expert testified that the comparable sales were not comparable due to what he found to be the unique geographical limitations of the subject property, as a "hole in the ground" whose purpose was "to hold the earth together." To achieve comparability, however, he adjusted each sale by -75%. Such significant adjustments demonstrate a formidable lack of comparability. See Pansini Custom Design Associates, LLC v. City of Ocean City, 407 N.J. Super. 137, 148 (App. Div. 2009) ("Adjustments to sales of a large magnitude 'vitiate' comparability"); M.I. Holdings v. City of Jersey City, 12 N.J. Tax 129, 137 (Tax 1991) (concluding that gross adjustments of 42% to 63% were incomparable to the subject property and not probative of its true value).

Further, plaintiffs' expert provided no foundation to support the adjustments made. He testified that the -75% and -65% location adjustments made were based on his 50 years of experience in the real estate industry. Such subjective measures for the calculation of an adjustment are unacceptable and are of little value to the court. Greenblatt, 26 N.J. Tax at 55. Moreover, the justification for the expert's location adjustment is based upon his determination

10

that the subject property had no access to any usable roadway due to his assumption that plaintiffs have no easement to utilize Morris Avenue. Reliable data is essential to effective appraisal practice. See The Appraisal of Real Estate, Chapter 9, Data Collection, 81 (15th Ed. 2020) Despite the impact of the expert's reliance upon the subject property's lack of access from Morris Avenue, the expert made no attempt to confirm the validity of this assumption.

Moreover, it appears that the expert's conclusion is likely incorrect. The deed by which the easement was created was admitted into evidence. This deed grants a perpetual easement "for the benefit of the grantee hereunder *and its successors and assigns, the benefits of which shall run with the land and inure to grantee and its successors and assigns.*" (emphasis added). In pertinent part, the deed provides "[a]n easement in common with others to grantee and is successors and assigns over Morris Avenue for (i) pedestrian and vehicular ingress, egress and regress to and from the premises conveyed hereunder and Route 73 . . ." The existence of that easement in a deed to the plaintiffs' predecessors in interest certainly casts doubt on the expert's conclusion that plaintiffs are unable to access the subject property via Morris Avenue and therefore upon the adjustments made to the comparable sales.

Further, the court finds that comparable sale three is not comparable to the subject property due to the improvement located thereon, and that the adjustment made by the expert to account for the building was unsupported. As noted above the expert acknowledged that comparable sale three contained a 6,000 square foot building and was therefore not comparable. To "extract" the building "cost" from the overall contract sales price of comparable sale three, the expert reduced the "overall price at percentage (sic) of 65% which is the ratio of the building assessment to the total assessment [for property tax purposes]." The expert made no calculations as to the actual value of the building to support such adjustment, nor did the expert provide any support for his

11

assumption that the ratio of building assessment to total assessment for tax purposes approximates the value of each such component.  Thus, the use of the adjusted sales price for comparable sale three is suspect at best.

IV.     Conclusion

The court concludes that plaintiffs did not provide sufficient credible evidence to overcome the presumption of correctness of the assessment for the subject property.  No cogent evidence to overcome the presumption of validity of the assessment was provided to the court.  As a result, the court affirms the assessment, and dismisses plaintiffs' complaint.

Very truly yours,

/s/  Kathi F. Fiamingo

Kathi.F. Fiamingo, J.T.C.